IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
CHIEF JUDGE MARCIA S. KRIEGER

Civil Action No. 19-cv-00038-MSK-MEH

ULTEGRA FINANCIAL PARTNERS, INC.,

    Plaintiff,

v.

PAUL MARZOLF,
MARZOLF HOLDINGS I, LLC, and
3620 AUSTIN PEAY, LLC,

    Defendants.

---

**OPINION AND ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to Mr. Marzolf's Motion for Judgment on the Pleadings **(# 25)**, the Plaintiff's ("Ultegra") response **(# 29)**, and Mr. Marzolf's reply **(# 30)**; Mr. Marzolf's Motion for Summary Judgment **(# 26)**, to which no response was filed by Ultegra; Ultegra's Emergency Motion for Default Judgment **(# 52)** against Defendant 3620 Austin Peay, LLC ("Peay"), to which no response was filed; and Ultegra's Motion to Amend the Case Caption **(# 57)** to correct the name of Peay. The Court grants that last motion and has preemptively amended the caption of this Order to correctly reflect Peay's name.

## FACTS

Because this matter presents both motions for judgment on the pleadings and a motion for summary judgment, the Court begins with the facts as recited in the pleadings, and elaborates as necessary in its analysis.

1

According to the Complaint **(# 1)**, in September 2018, Mr. Marzolf, his entity Marzolf Holdings I, LLC ("Holdings"), and his entity Peay contacted Ultegra about arranging a $13.3 million bridge loan to finance a purchase of a portfolio of 174 houses. Ultegra responded that it would charge a $75,000 due diligence fee to determine whether or not to proceed with the loan. The Defendants agreed to pay the fee, but made only a partial payment by the due date. Mr. Marzolf promised to pay the remaining balance and provided Ultegra with a copy of his 401(k) statement, demonstrating a sufficient funds to do so. Mr. Marzolf and his entities also agreed to pay Ultegra its attorney fees relating to the transaction. They partially paid those fees, but a balance of roughly $10,000 remains unpaid.

During discussions about the loan, the Defendants represented to Ultegra that Mr. Marzolf[1] owned a building in Memphis, Tennessee, and that the building was either unencumbered or that the encumbrance did not exceed $200,000. Mr. Marzolf intended to the requested loan with equity in the building in Memphis and equity in some or all of the 174 houses to be purchased.

Ultegra presented Mr. Marzolf with a variety of documents, most notably, a Fee Agreement, which Mr. Marzolf executed. On September 28, 2018, Ultegra was prepared to close on the loan. One of the terms of the loan required the Defendants to provide a down payment of approximately $5 million. The Defendants were unable to tender the down payment at that time. Ultegra agreed to extend certain deadlines to close the loan, but by early October 2018, it became clear that the Defendants would not be able to do so. Ultegra then demanded

---

[1] The Complaint is fairly loose in differentiating among the specific actions or characteristics of the various Defendants. For example, it seems very likely that Peay, not Mr. Marzolf, is the titled owner of the building in Memphis. Nevertheless, the Court will assume that the Complaint means exactly what it alleges.

full payment of its due diligence fee, its attorney fees, and certain other fees that were due and owing. The Defendants did not respond to the demand for payment.

In this action, Ultegra seeks to recover amounts owed to it. Ultegra a number of theories for recovery: (i) breach of contract, apparently under Colorado common law, against all Defendants, in that the Defendants failed to pay the fees and costs they agreed to; (ii) promissory estoppel, apparently under Colorado law, against all Defendants, in that the Defendants promised to pay the various fees and should have expected that promise to induce Ultegra's reliance; (iii) negligent misrepresentation, apparently under Colorado law and against all Defendants, in that the Defendants "supplied false information" to Ultegra in the course of the loan transaction, causing Ultegra to suffer injuries; and (iv) a claim against Mr. Marzolf, apparently under Colorado law, in that Mr. Marzolf "guaranteed the performance of obligations owed to Ultegra" by Holdings and Peay, but has failed to honor that guarantee.[2]

Mr. Marzolf has two pending dispositive motions. First, he moves for judgment on the pleadings **(# 25)** with regard to Ultegra's breach of contract and promissory estoppel claims. Mr. Marzolf argues that the Fee Agreement is a Credit Agreement as defined by CR.S. § 38-10-124, and that, by statute, Mr. Marzolf is required to have signed that credit agreement. Mr. Marzolf contends that he did not do so. He further contends that the statute also precludes recovery in promissory estoppel for contract claims that fail due to a lack of a signed writing. In response **(#29)**, Ultegra contends that: (i) the Court is bound by the well-pled allegations in the Complaint and thus, must conclude that Mr. Marzolf did indeed execute the Fee Agreement; (ii) Ultegra is not a "financial institution" as required for application of C.R.S. § 38-10-124; (iii) that C.R.S.

---

[2] This Court subsequently severed and stayed Ultegra's claims against Holdings, and directed the parties to arbitrate those claims pursuant to their agreement.

§38-10-124 does not apply once partial performance has been rendered, and Mr. Marzolf partially performed his obligations as recited in the Complaint; and (iv) Mr. Marzolf's motion is not properly before the Court because it seeks dismissal on an affirmative defense that requires evidentiary support.

Separately, Mr. Marzolf also moved for summary judgment in his favor on Ultegra's claims for negligent misrepresentation and breach of guarantee. As to the former, he contends that he did not supply any false information to Ultegra. He states that Ultegra cannot demonstrate that he ever promised a $5 million "cash down payment," and instead, points to documents that state that the down payment "is to be facilitated through monies obtained" from the sale of the building in Memphis. Mr. Marzolf further states that Ultegra was aware that sale of the Memphis building was a precondition for the closing of the loan. As to the breach of guarantee claim, Mr. Marzolf contends that he never issued a written guarantee, and that C.R.S. § 38-10-112 requires that any such guarantee be reduced to writing and signed. Ultegra has not filed any response to this motion.

Also pending is Ultegra's Motion for Default Judgment **(# 52)**, seeking judgment in the amount of $820,943, plus fees and costs, against Peay.

## ANALYSIS

**A. Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is analyzed according to the same standards as a motion under Fed. R. Civ. P. 12(b)(6). *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace*

4

*Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Mr. Marzolf essentially raises two issues in his motion: (i) that Ultegra is a "financial institution" for purposes of C.R.S. § 38-10-124, and (ii) that as a result, Ultegra must produce a document signed by Mr. Marzolf in order to support its breach of contract and promissory estoppel claims.

C.R.S. § 38-10-124 contains a series of nested definitions. The statute applies to "credit agreements" – meaning "a contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation," as well as "any representations and warranties made or omissions in connection with" such an agreement. C.R.S. § 38-10-124(1)(a)(I), (III). A "creditor" is defined as "a financial institution which offers to extend . . . credit under a credit agreement with a debtor." C.R.S. § 38-10-124(1)(b). And a "financial institution " is defined as a "bank, savings and loan association, savings bank, credit union, or mortgage or finance company." C.R.S. § 38-10-124(1)(d). The operative provision of the statute provides that "no [ ] creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of $25,000 unless the credit agreement is in writing and is signed by the party against whom enforcement is sought." C.R.S. § 38-10-124(2).

Ultegra points out that, among other things, nothing in the Complaint alleges facts that would suggest that it is a "financial institution" as defined in C.R.S. § 38-10-124(2). It is clear from the statute that its operative provisions apply only to actions by a "creditor"; that, by definition, a "creditor" must be "a financial institution"; and that a "financial institution" must be a bank, savings and loan association, savings bank, credit union, or mortgage or finance company. The most that the Complaint states about Ultegra is that it is "a Colorado corporation." *Docket # 1*, ¶ 1. Nothing in the Complaint permits the conclusion that Ultegra is a bank, savings and loan association, savings bank, credit union, or mortgage or finance company. Thus, the predicate for an application of C.R.S. § 38-10-124 is not present on the face of the Complaint. For that reason, Mr. Marzolf has failed to demonstrate that, at least from the facts

6

alleged in the Complaint, C.R.S. § 38-10-124 applies to Ultegra's breach of contract and promissory estoppel claims.

In his reply brief, Mr. Marzolf suggests that the Court should infer that Ultegra is a financial institution because it uses the word "Financial" in its corporate name, and because its website "promotes its lending and other financial services." But Ultegra's website falls outside the four corners of the Complaint and is not something the Court may consider on a Rule 12 motion. And, in any event, the mere fact that Ultegra uses the word "financial" in its name or promotional material does not suffice to make it a "financial institution" under C.R.S. § 38-10-124(1)(d). Curiously, Mr. Marzolf cites to *Hendricks Communities, LLC v. Red Stone Lending Agency, LLC*, 2015 WL 9921336 (Colo. Dist. Dec. 11, 2015), a case in which the defendant sought dismissal of a breach of fiduciary duty claim, claiming that "it is a lender, not a mortgage broker." In support of that argument, the defendant, much like Mr. Marzolf here, pointed to such superficial facts as the use of the word "lending" in its corporate name. The court rejected that proposition, explaining that "whether a party is a fiduciary is determined by the nature of the services it provides, not by a label that may be attached to it." Thus, far from supporting Mr. Marzolf's argument that Ultegra is a "financial institution" because it uses the word "financial" in its name, *Hendricks* unambiguously rejects it.

Thus, because Mr. Marzolf has not shown that the facts alleged in the Complaint establish that Ultegra is a "financial institution" as defined by C.R.S. § 38-10-124(1)(d), his motion seeking dismissal of the breach of contract and promissory estoppel claims against him pursuant to C.R.S. § 38-10-124(2) is denied.[3]

---

[3] The Court expresses no opinion as to the merits of any of the other arguments in the parties' briefs on this motion.

### B. Motion for summary judgment

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Mr. Marzolf moves for summary judgment on Ultegra's claims of negligent misrepresentation and breach of guarantee against him. Ultegra has not filed any response to Mr. Marzolf's motion. When a party with the burden of proof at trial fails to respond to a summary judgment motion, the Court does not treat the motion as conceded and simply enter the requested judgment. Rather, the Court treats the movant's tendered evidence as undisputed and then considers whether that evidence suffices to demonstrate the absence of a genuine dispute of material fact. *See Perez v. El Tequila, LLC,* 847 F.3d 1247, 1254-55 (10th Cir. 2017); Fed. R. Civ. P. 56(e)(3). With those standards in mind, the Court turns to the two claims challenged by Mr. Marzolf.

    1. <u>Negligent misrepresentation</u>

To establish a claim of negligent misrepresentation under Colorado law against Mr. Marzolf, Ultegra must show: (i) that Mr. Marzolf, in the course of his or her business or profession; (ii) made a misrepresentation of a material fact without exercising due care; (iii) that that fact was for the guidance of others in a business transaction; (iv) Mr. Marzolf knew that others would rely on the representation; and (v) Ultegra justifiably relied on the

9

misrepresentation to its detriment. *Templeton v. Catlin Specialty Ins. Co.*, 612 Fed.Appx. 940, 953 (10th Cir. 2015).

Mr. Marzolf's motion argues that Ultegra cannot show that he made any misrepresentation about the source of the $5 million down payment. Mr. Marzolf points to an undated Ultegra document entitled "UFP Due Diligence Punch List." That document apparently serves as a checklist used by Ultegra to identify what additional documents it required in order to decide whether to move forward on the loan. A portion of the document entitled "Acquisition summary" appears to describe the two transactions that Ultegra understood to be at issue. "Transaction 1" refers to Holdings' purchase of a "174 SFR [single-family residence] rental unit portfolio," and that "a loan of up to 80% of the purchase price is to be obtained to facilitate the transaction." The summary goes on to state that "the 20% down payment is to be facilitated through monies obtained in Transaction 2[:] the same of a commercial property located at 3620 Austin Peay, Memphis, TN [ ] by seller [Peay]." The summary concludes by stating that "Transaction 2 is contingent upon successful sale and funding of Transaction 1."

To determine whether these undisputed facts entitle Mr. Marzolf to summary judgment on the negligent misrepresentation claim against him, the Court must return to the Complaint to ascertain precisely *what* Ultegra's negligent misrepresentation claim asserts. In the "Introduction" section of the Complaint, Ultegra alleges that the Defendants, including Mr. Marzolf, "represented . . . they had the ability to come up with the loan down payment of $5 million." *Docket* # 1 at 1. When it came time for Ultegra loan to close on September 28, 2018, "Ultegra requested that Marzolf and his companies provide the down payment," but the Defendants "could [not] come up with the down payment in order to close the Loan." *Id.*, ¶ 34,

35. Thus, the Court understands Ultegra's negligent misrepresentation claim to turn on[4] the representation by Mr. Marzolf that he "had the ability to come up with the loan down payment of $5 million."

Although such facts are undisputed at this juncture, they are not sufficient to demonstrate that Mr. Marzolf did not represent his ability to come up with the down payment. To the contrary, the Due Diligence Punch List seems to confirm that Ultegra expected the Defendants to make a "20% down payment" to secure the loan, and understood that the Defendants would generate that money thorough the completion of "Transaction 2," the sale of the building in Memphis owned by Peay.[5] If anything, the document supports and clarifies the allegation in the Complaint. Mr. Marzolf represented that "he had the ability to come up with" a 20% down payment and he specifically identified <u>how</u> he was going to generate that down payment: by selling the building owned by Peay. It appears that Mr. Marzolf's confidence that the sale of Peay's building was misplaced and that the sale did not close, thereby preventing Mr. Marzolf

---

[4] Mr. Marzolf's motion assumes that this alleged misrepresentation is the only basis of Ultegra's negligent misrepresentation claim. Because the Court finds that Mr. Marzolf is not entitled to summary judgment on this claim, the Court need not consider whether the Complaint might suggest that there are other alleged misrepresentations by Mr. Marzolf that also support the claim.

[5] The Court confesses that it has some difficulty understanding the transaction structure described in the Due Diligence Punch List. That document states that "Transaction 2" – the sale of the building owned by Peay – "is contingent upon successful sale and funding of Transaction 1" – the sale of the portfolio of houses to Holdings. But because it was necessary to complete Transaction 2 to generate the funds necessary to make the down payment required to close Transaction 1, it is difficult to see how Transaction 2 could ever be "contingent upon" the precedent completion of Transaction 1. It is possible that the drafter of the document made a typographical error, and that the parties intended the completion of Transaction <u>2</u> (the sale of the Peay building) to be required before Transaction <u>1</u> (the sale of the housing portfolio and the closing of the loan to the Defendants) could proceed. Or it is possible that the parties had some other understanding of how the two transactions would be structured. However, it is not necessary to conclusively resolve the meaning of this sentence in order to decide this motion.

11

from producing the down payment he had promised. This is not inconsistent with what the Complaint alleges – that Mr. Marzolf promised that he could come up with the down payment, but ultimately, he could not.

Mr. Marzolf's motion seems to be predicated on a misreading of the Complaint. He appears to believe that Ultegra is alleging that "Mr. Marzolf represented the $5 million [ ] down payment was to be a cash down payment." But nowhere does the Complaint allege that Mr. Marzolf promised a "cash down payment." Nothing in the Complaint is inconsistent with a theory by Ultegra that Mr. Marzolf promised that "he had the ability to come up with the down payment" <u>by causing the sale of the Peay building</u>. It appears to be undisputed that Mr. Marzolf was unable to complete the sale of the Peay building, and thus, lacked "the ability to come up with the down payment." Because the evidence adduced by Mr. Marzolf, although undisputed, does not demonstrate that Ultegra cannot prove its negligent misrepresentation claim, Mr. Marzolf's motion as to this claim is denied.

2. <u>Breach of guarantee</u>

Mr. Marzolf notes Ultegra's allegations in the Complaint that he "guaranteed the performance of the obligations owed to Ultegra" by Holdings and Peay. *Docket # 1*, ¶ 68, 69. He argues that C.R.S. § 38-10-112(1)(b) requires that "every special promise to answer for the debt, default, or miscarriage of another person" is an agreement that must be "in writing and subscribed by the party charged therewith." He then argues – without citation to any supporting evidence – that he "never signed a written guarantee regarding the debt" of Holdings or Peay. Thus, he contends, he is entitled to summary judgment on Ultegra's claim for breach of guarantee.

There is no material dispute that under Colorado law, a promise to guarantee the debt of another is subject to the statute of frauds, and thus must be evidence by a writing in order to be enforceable. *Moffat County State Bank v. Told*, 780 P.2d 11, 12 (Colo.App. 1989). The Court is somewhat troubled by Mr. Marzolf's failure to support his essential contention – that he "never signed a written guarantee" – with any evidence. Rule 56(c)(10(A) requires the summary judgment movant to support its factual contentions with citations to supporting evidence. It would be a trivial matter to obtain an affidavit from Mr. Marzolf that establishes that fact, or Mr. Marzolf could have pointed to the Fee Agreement at issue in this case and demonstrated that he is not a signatory of it in his personal capacity. However, a charitable reading of Mr. Marzolf's motion might permit the conclusion that he is instead invoking Rule 56(c)(1)(B), contending that Ultegra "cannot produce admissible evidence to support" the counterfactual position: that Mr. Marzolf <u>did</u> sign such a guarantee. In this regard, Ultegra's failure to file a response essentially concedes the point – that it cannot produce a guarantee signed by Mr. Marzolf individually.[6] Accordingly, Mr. Marzolf is entitled to summary judgment on Ultegra's claim for breach of guarantee.[7]

### C. Motion for Default Judgment against Peay

Finally, the Court turns to Ultegra's request for a default judgment against Peay.

---

[6] The parties have produced the signed Fee Agreement in conjunction with other motions, but, curiously, Mr. Marzolf does not produce it in support of his summary judgment motion. *See Docket # 8-1; Docket # 25-1.* Were the Court to elect to take notice of that Fee Agreement, the record clearly reflects that Mr. Marzolf's signature on it is in his capacity as President of Holdings. *C.f. Genesis Capital Ventures, LLC v. Restore With Apex, Inc.*, 282 F.Supp.3d 1225, 1231 (D.Colo. 2017) (finding a genuine dispute of fact as to whether company's President signed guarantee in his individual or representative capacity, where contract did not clearly identify his title or representative role in the signature block).

[7] Neither party having requested immediate entry of a partial judgment pursuant to Fed. R. Civ. P. 54(b), the Court will enter judgment in Mr. Marzolf's favor on this claim at the conclusion of all other proceedings in this case.

The Court has the authority to enter a default judgment as a sanction against a party who fails to comply with a court order. *Derma Pen, LLC v. 4EverYoung, Ltd.*, 736 Fed.Appx. 741, 745 (10th Cir. 2017). Because default judgment is an extreme sanction, the Court should resort to it only in circumstances where the party to be sanctioned has acted willfully and no sanction short of entry of judgment can effectively address the non-compliance. *Id.*, citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). Thus, before resorting to a sanction of a default judgment, the Court must consider the *Ehrenhaus* factors: (i) the degree of actual prejudice to the opposing party; (ii) the degree of interference with the judicial process; (iii) the culpability of the litigant; (iv) whether the court warned the party of the potential of a default judgment in advance; and (v) the efficacy of lesser sanctions. 965 F.2d at 920.

On July 10, 2019, Peay's counsel moved to withdraw from representation **(# 23)** of Peay, explaining that this was done "at [Peay's] request." On September 17, 2019, with no party having filed any opposition to Peay's counsel's request, the Court indicated **(# 31)** that it was inclined to grant counsel's request, but noted that because Peay was a legal entity, it could not proceed *pro se*. *See e.g. Riviera Drilling & Explor. Co. v. Gunnison Energy Corp.*, 412 Fed.Appx. 89, 92 (10th Cir. 2011). Because its counsel's withdrawal would "essentially place[ Peay] in a position of default -- it being unable to defend this litigation *pro se*" – the Court directed that Peay "shall arrange for substitute counsel to enter an appearance on its behalf" within 28 days. The Court further advised that "[i]f, at the end of that 28-day period . . . substitute counsel has not appeared on behalf of [Peay]," its current counsel would be permitted to withdraw and Peay "will thereafter be deemed to be in default on the claims against it" and the Court "will entertain a motion for default judgment" against Peay. To ensure that Peay received notice of the Court's order, the Court directed that Peay's current counsel provide it with a copy

14

of the Court's order. Counsel thereafter certified **(# 32)** that he had given such notice. Peay did not secure new counsel, nor otherwise respond in any way to the Court's order. On October 18, 2019, long after that 28-day period had passed with no new counsel having entered an appearance on Peay's behalf, the Court formally granted **(# 44)** Peay's counsel's request to withdraw and directed the entry of default against Peay.

Based on these facts, the Court finds that the *Ehrenhaus* factors warrant entry of default judgment against Peay. Peay's failure to secure new counsel is prejudicial to Ultegra because Peay is unable to act *pro se* in this litigation and an absence of counsel for Peay would otherwise prevent Ultegra from meaningfully prosecuting its claims against Peay. Peay's failure to comply with the Court's instruction to retain new counsel is also prejudicial to the judicial system, because it unduly delays the proceedings and requires the Court to enter additional orders (including this one) to address Peay's failure to obtain counsel. Peay is fully culpable for its failure to secure new counsel, as the record reflects that its prior counsel withdrew <u>at Peay's request</u> and that this Court specifically ensured that Peay was given notice of the order that it secure new counsel. Peay has not made any filings that suggest that it has good cause for its failure to obtain new counsel or otherwise comply with the Court's order. The Court's prior order specifically advised Peay that a failure to secure new counsel would result in entry of a default judgment against it. And because the entry of counsel on Peay's behalf is a precondition to any further proceedings involving the claims against Peay, the Court finds that Peay's fully-culpable failure to secure new counsel as directed by the Court is a situation that cannot be effectively resolved by any sanction short of a default judgment. Accordingly, the *Ehrenhaus* factors favor the entry of a default judgment against Peay.

15

Taking the well-pled allegations in the Complaint as true, the Court has subject-matter jurisdiction over the claims against Peay pursuant to 28 U.S.C. § 1332. Ultegra is a Colorado corporation with its principal place of business in Colorado, making it a citizen of Colorado. 28 U.S.C. § 1332(c). Peay is identified as a limited liability company whose sole member is Mr. Marzolf, and Mr. Marzolf is identified as being a citizen of Washington. Thus, Peay is a citizen of Washington. *Siloam Springs Hotel, LLC v. Century Surety Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). The amount in controversy appears to be in excess of $665,000 (but see below).

The Court has personal jurisdiction over Peay. The record does not appear to disclose an executed Return of Service upon Peay, but on July 3, 2019, Peay filed an Answer **(# 22)** that did not raise any defense relating to a lack of personal jurisdiction. The failure to assert a personal jurisdiction defense in an Answer constitutes a waiver of any such defense under Fed. R. Civ. P. 12(h)(1)(B)(ii). Moreover, the record reflects that Peay, along with the other Defendants, purposefully directed conduct at the State of Colorado by entering into extensive negotiations and, ultimately, one or more contracts with Ultegra, a Colorado citizen. The terms of those contracts specifically invoke Colorado law and call for the agreements to be performed in Colorado. Thus, the Court has personal jurisdiction over Peay.

According to the affidavit of Muhammad Howard, Ultegra's principal, Ultegra is seeking damages from Peay reflecting: (i) Peay's failure to pay a Banking Fee of $665,000; (ii) Peay's failure to pay a Due Diligence Fee of $65,000; (iii) Peay's failure to pay a Loan Cost Fee of $23,435; and (iv) prejudgment interest from September 28, 2018 at the rate of 8%. All of these damages appear to arise from Ultegra's first claim against Peay, sounding in breach of contract.[8]

---

[8] Arguably, Ultegra could recover these same damages on its promissory estoppel claim against Peay as well. But the analysis herein would yield the same results if conducted through the lens of promissory estoppel rather than breach of contract.

To prove a claim of breach of contract under Colorado law, Ultegra must show that: (i) Peay entered into a binding contract with it, (ii) Ultegra performed its obligations under the contract or that such obligations were excused; (iii) Peay did not perform its obligations under the contract; and (iv) Ultegra suffered losses as a result of Peay's non-performance. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Given Peay's default, the Court treats the well-pled allegations in the Complaint as true. *U.S. v. Craighead*, 176 Fed.Appx. 922, 924 (10th Cir. 2006).

The Complaint alleges that Peay, along with the other Defendants, "agreed to pay [a] $75,000 due diligence fee." *Docket # 1*, ¶ 4. Collectively, the Defendants paid $15,000 of that fee, leaving $60,000 unpaid. ¶ 5. Peay agreed to pay the remainder on or before September 20, 2018. ¶ 6, 7. Ultegra continued to process the loan upon a promise that the due diligence fee would be paid. ¶ 10. The Complaint alleges that by October 5, 2018, the due diligence fee remained unpaid. ¶ 44, 45. Thus, the record reflects that Peay entered into a binding agreement with Ultegra to pay the due diligence fee, that Ultegra performed its obligations under that agreement by engaging in the due diligence called for by the parties' agreement, that Peay

---

Ultegra argues that it could recover damages from Peay on its negligent misrepresentation claims, but the Complaint is decidedly unclear as to what representations Peay made to Ultegra and how those representations were false. For example, the Complaint makes clear that Peay represented: (i) that it owned the building in Memphis and that the building was encumbered by $200,000 or less, ¶ 17, 18; and (ii) that the houses in the portfolio Holdings sought to purchase were substantially unencumbered, ¶ 21. The Complaint alleges that Peay represented that it would pay Ultegra's attorney fees for the transaction and that it did not do so. ¶ 11. But Mr. Howard's affidavit identifying Ultegra's claimed damages does not recite a claim for any unpaid attorney fees. (Ultegra's motion mentions a fee affidavit that its counsel intended to file, but no such affidavit appears in the record.) As noted herein, the Complaint does not allege that Peay ever represented that it agreed to the terms of the Fee Agreement, nor that it agreed to pay the Banking Fee, and thus, the negligent misrepresentation claim cannot be predicated on such a representation. Thus, the Court finds that Ultegra has not alleged any facts that would support an award of the damages claimed in Mr. Howard's affidavit predicated on a negligent misrepresentation claim.

breached that agreement by failing to pay the remaining $60,000 when it became due, and that Ultegra suffered a loss of $60,000 as a result of Peay's breach.

The Complaint is less clear as to whether Peay entered into a contract to pay the Banking Fee claimed by Ultegra. That fee arises in a contract referred to as the Fee Agreement. The Complaint alleges that "Ultegra presented its Fee Agreement to [Mr.] Marzolf for execution," and that "Marzolf executed the Fee Agreement." ¶ 22, 24. But the Complaint never directly alleges that Peay agreed to and entered into the Fee Agreement on its own behalf. At most, it might be possible to infer indirectly that Peay executed the Fee Agreement based on Paragraph 32, which states "In addition to the Fee Agreement, . . . [Peay] also executed Ultegra's Term Sheet, Commitment Letter, [etc.]" But even assuming that Peay "executed" the Fee Agreement, it is not clear from the Complaint what Peay's execution reflects. (One hint might be found in Paragraph 27, which indicates that the Fee Agreement "grants Ultegra a security interest in other assets owned by . . . [Peay]." It may be that Peay executed the Fee Agreement simply to reflect its understanding or consent to Mr. Marzolf giving Ultegra a security interest in Peay's assets.) Because the Court cannot find any provision in the Complaint that clearly states or indicates that Peay manifested its asset to pay the Banking Fee set forth in the Fee Agreement, the Court concludes that Ultegra's Complaint does not state a colorable breach of contract claim against Peay for the unpaid Banking Fee.[9]

Finally, Mr. Howard's affidavit refers to Peay's agreement to pay a Loan Cost Fee. The Complaint makes no reference to a Loan Cost Fee, nor is it clear from the Complaint where

---

9     Mr. Howard's affidavit in support of Ultegra's motion expressly states that Ultegra and Peay "entered into a Fee Agreement. . . ." But allegations as to facts (on issues other than damages) that are not found within the Complaint itself are not properly before the Court on a motion for a default judgment. *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Peay's agreement to pay such a fee can be found. At most, it appears to the Court that all of Ultegra's claims as to fees other than the Due Diligence Fee, spring from the terms of the Fee Agreement. For the reasons set forth above, the Complaint fails to adequately allege that Peay agreed to be bound by the Fee Agreement, and thus, the Court cannot enter a default judgment against Peay relating to the Loan Cost Fee.

Thus, the Court finds that Ultegra is entitled to a default judgment on its breach of contract claim against Peay in the amount of $60,000.[10] The Court further finds that, under Colorado law (which applies in this diversity case), Ultegra is entitled to prejudgment interest at an annual rate of 8%. C.R.S. § 5-12-102(1), *see generally Romero v. Helmerich & Payne Intl. Drilling Co.*, 768 Fed.Appx. 838, 845 (10th Cir. 2019). As measured from September 28, 2018, 8% annual interest on $60,000, compounded annually over a period of 16 months (September 2018 – January 2020), yields a total of $6,483 in interest. Thus, the Court will enter a default judgment in favor of Ultegra and against Peay in the amount of $66,483.

## CONCLUSION

For the foregoing reasons, Mr. Marzolf's Motion for Judgment on the Pleadings **(# 25)** is **DENIED**. Mr. Marzolf's Motion for Summary Judgment **(# 26)** is **GRANTED IN PART**, insofar as Mr. Marzolf is entitled to judgment in his favor on Ultegra's breach of guarantee claim, and **DENIED IN PART** with regard to Ultegra's negligent misrepresentation claim. Ultegra's Emergency Motion for Default Judgment **(# 52)** is **GRANTED IN PART** and

---

[10] The fact that Ultegra ultimately recovers less than the statutorily-required amount in controversy does not require the Court to revisit the question of subject-matter jurisdiction. The 10th Circuit has held that "a district court does not lack § 1332 jurisdiction if a plaintiff ultimately recovers less than the required jurisdictional amount." *Symes v. Harris*, 472 F.3d 754, 759 (10th Cir. 2006). So long as the amount in controversy standard was satisfied at the time this action was commenced – and it appears to have been – subsequent events do not defeat the existence of jurisdiction. *Id.*

**DENIED IN PART**, insofar as the Court directs that the Clerk of the Court enter a default judgment in favor of Ultegra and against Peay in the amount of $66,483. Ultegra's Motion to Amend the Case Caption **(# 57)** to correct the name of Peay is **GRANTED**, and Peay's name is amended as shown in the caption of this Order.

The dispositive motion deadline **(# 18)** in this case having now passed, Ultegra's breach of contract, promissory estoppel, and negligent misrepresentation claims against Mr. Marzolf will now proceed to trial. The parties shall begin preparation of a Proposed Pretrial Order and shall jointly contact chambers to schedule a Pretrial Conference.

Dated this 27th day of February, 2020.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge